# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | |
|---|---|
| **JOHN BUTLER, individually and assignee of JANIE BUTLER,**<br><br>        **Plaintiff,**<br><br><br>        **vs.**<br><br><br>**UNITED HEALTHCARE OF TENNESSEE, INC.,**<br><br>        **Defendant.** | **MEMORANDUM AND ORDER**<br><br><br>**No. 3:07-CV-465**<br><br>**(Campbell/Shirley)** |

This case began on December 14, 2007, when Plaintiff John Butler filed an ERISA[1] claim on his own behalf and on behalf of his former wife Janie Butler[2] against health insurance provider United Healthcare of Tennessee, Inc. (United). Mr. Butler alleges that United's denial of Ms. Butler's medical benefits claim was arbitrary and capricious, and he brings this civil enforcement action under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).[3] Mr. Butler seeks a review of United's determination that Ms. Butler, who struggles with substance abuse,

---

[1]ERISA refers to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

[2]Mr. Butler received an assignment of rights from Janie Butler as part of the marital dissolution agreement with Ms. Butler. During the events relevant to this matter, Ms. Butler was Mr. Butler's wife.

[3]Mr. Butler also filed a breach of fiduciary claim, which the court dismissed in September 2010. (See Sept. 9, 2010 Mem. & Order (Docket No. 43) at 11-12.)

did not qualify for residential rehabilitation treatment at Sierra Tucson Hospital during February and March 2005. He contends that United's decision was substantively and procedurally unreasonable (i.e., was not a "full and fair review"), and that United must pay for Ms. Butler's treatment.

This case, now in its fifth year of litigation, has already seen two remands to United for flaws in United's review process. The matter is back before the court a third time on the parties' renewed motions for judgment on the administrative record. Mr. Butler challenges United's latest attempt at review and its latest denial of benefits, contending that a third remand, in light of the history of United's review, would be futile. He asks the court to (1) bypass the remand process, (2) review the claim *de novo*, (3) award the benefits sought, plus pre-judgment interest; (4) award attorney's fees, and (5) impose ERISA penalties on United.

For the reasons set forth below, the court finds that United's latest (and final) review and decision did not provide a full and fair review to Mr. Butler. The court further finds that another remand would be futile. Accordingly, the court sustains Mr. Butler's objection and, based on the court's review of the administrative record (AR), finds that Mr. Butler is entitled to an award of the benefits he seeks along with pre-judgment interest. The court also finds that ERISA penalties are warranted in the amount of $99,000. As for attorney's fees, the court defers decision on that issue until it has been fully briefed, as outlined below.

2

# I. FACTUAL AND PROCEDURAL BACKGROUND[4]

## A. History of Ms. Butler's Treatment and United's Administrative Review of the Benefits Claim

### 1. The Plan

Plaintiff John Butler was a participant in the ERISA-governed group health benefit plan sponsored by Mr. Butler's employer. The Plan—called the United HealthCare Choice Plus Plan—was insured by United.[5] Under the Plan, United has discretionary authority to determine eligibility for benefits.[6]

Janie Butler, Mr. Butler's wife at the time, was a covered dependent under the Plan. Ms. Butler suffered from substance abuse and mental health problems and made multiple claims with United. Because United delegated its discretionary authority in the area of mental health and substance abuse treatment to United Behavioral Health (UBH), an affiliate of United, UBH handled Ms. Butler's claims at issue in this case.

---

[4]See also the court's September 9, 2010 Memorandum And Order (Docket No. 43) discussing the factual and procedural background of the case up to that point.

[5]The Plan is located in the administrative record (AR) at AR 1-109.

[6]United's authority to determine eligibility for benefits was set out in the Plan under the category entitled "Interpretation of Benefits":

> We [United] have the sole and exclusive discretion to do all of the following:
> • Interpret Benefits under the Policy.
> • Interpret the other terms, conditions, limitations and exclusions set out in the Policy, including this Certificate of Coverage and any Riders and Amendments.
> • We [United] may delegate this discretionary authority to other persons or entities who provide services

(Plan at AR 78.)

2.    Ms. Butler's Claim

The claim in dispute occurred in 2005.  But before then, United had handled similar claims submitted by Ms. Butler.

a.    Previous Treatment and Claims

In 2004, Ms. Butler submitted a claim for substance abuse treatment.  United authorized coverage for Intensive Outpatient Treatment (IOP) at Ridgeview Institute in Atlanta, Georgia, for substance abuse.  From August 18, 2004, to September 13, 2004, Ms. Butler received Intensive Outpatient Treatment at Ridgeview.  At the end of the IOP treatment at Ridgeview, UBH approved Ms. Butler for additional treatment at Ridgeview's partial hospital/day treatment program (PHP) level of care (LOC).  But Ms. Butler walked away from the program against medical advice (AMA).

Before her 2005 claim, Ms. Butler also received treatment from Dr. Kenneth Jobson, a board-certified psychiatrist in Knoxville specializing in addiction, and she participated in an Alcoholics Anonymous program.  But still she suffered from relapses.

b.    Treatment at Sierra Tucson and Denial of Claim

In 2005, she entered an inpatient treatment program at the Sierra Tucson Hospital in Tucson, Arizona, where she received medical care from Dr. Marla Perry (her attending physician) and others.  On the date she entered the inpatient program (February 15, 2005), UBH authorized coverage for detoxification treatment, which Ms. Butler completed in two days.  But on February 17, 2005, at the recommendation of her physicians, Ms. Butler sought further inpatient treatment coverage.  UBH referred her request to its Peer Review committee to determine whether the requested treatment was medically necessary.  On February 21, 2005, Dr.

4

Charles Freed, UBH's Medical Director, denied the request for residential rehabilitation treatment. (See AR 145-150.) Dr. Freed concluded, without citations to the record, that:

> Based on the UBH Level of Care Guidelines for Residential Treatment, the patient does not meet medical necessity criteria for the Residential Rehabilitation Level of Care admission on 02/17/05 and forward. The patient does not have a history of prior failed treatment at the Partial Hospitalization or Intensive Outpatient Levels of Care, is not a risk to harm himself [sic] or others, does not have a pervasive impairment of functioning preventing treatment at a less restrictive level of care, is not at risk of exacerbating a concomitant serious medical condition, is not at risk or [sic] having subjective withdrawal symptoms that could not be managed at another level of care and is not residing in an environment subversive to abstinence with a high risk of substance induced dangerous behavior. The patient could be safely managed at the Intensive Outpatient Level of Care.

(AR 147.) In the meantime, Ms. Butler had started the more extensive treatment at Sierra Tucson, where she remained for an additional thirty days.

3. UBH's Criteria for Coverage

UBH's criteria for determining whether a patient qualifies for Residential Substance Abuse treatment are set forth in the UBH "2005 Level of Care Guidelines: Substance Abuse" (AR 110-112) (Guidelines). According to the Guidelines, UBH determines whether residential rehabilitation is appropriate by determining whether at least one of the following criteria is met:

1. History of continued and severe substance abuse despite appropriate motivation and recent treatment in an intensive outpatient or partial hospital program.
2. Risk of harm to self or others and/or pervasive impairment in functioning due to continued and severe substance use which prohibits treatment from occurring safely in a less restrictive environment.
3. The risk of exacerbation of serious concomitant medical conditions due to continued substance use, which prohibits treatment from occurring safely at a lower level of care and requires 24-hour monitoring.
4. Risk of withdrawal symptoms, which cannot be safely managed without requiring 24-hour monitoring.
5. A living environment that is subversive to abstinence, and a high risk of substance induced dangerous behavior.

5

6.     Withdrawal symptoms of extreme subjective severity with the lack of resources or functional social supports to manage the symptoms.

(Guidelines at AR 110.)  The Guidelines were not part of plan documents given to participants, but UBH considered the Guidelines an internal policy and used them to determine eligibility for benefits.

Mr. Butler requested a copy of the Guidelines in a February 10, 2006 letter.  (AR 164.) But UBH never honored his request.  Mr. Butler saw the Guidelines for the first time on July 30, 2008, when United filed the administrative record with the court.  (See Pl.'s June 13, 2013 Supplemental Brief (Docket No. 100) at 39-40;  Decl. of Joel Axler, M.D. (Docket No. 12) ¶ 5 (authenticating a "true and accurate copy of the administrative record" and noting that the Guidelines were located in the record at AR 110-112).)

    4.    <u>Administrative Appeals</u>

        a.     First Appeal and UBH's First Internal Review

After Ms. Butler left the Sierra Tucson treatment program on March 15, 2005, she sent a post-treatment appeal to United on April 29, 2005.[7]  On June 1, 2005, Dr. Joel Axler, Behavioral Medical Director at UBH, denied the appeal.  (AR 151-152.)  The very brief letter said that Dr. Axler had reviewed documents generally referred to as "Medical Record(s), The letter requesting an appeal, [and] Care management records."  (AR 151.)  Dr. Axler wrote that Ms. Butler did not meet the Guidelines criteria

from 02/17/05 and forward.  There was no evidence of medical complications due to the patient's history of substance abuse or substance withdrawal that required

---

[7]The appeal was actually submitted by Dr. Michael Scott, the Medical Director at Sierra Tucson, on Ms. Butler's behalf.  (See AR 263.)

6

the monitoring in a RTC or Inpatient Level. There were no acute psychiatric symptoms that required inpatient monitoring. The patient could be safely managed at the Intensive Outpatient Level of Care.

(AR 151-152.) No other explanation was provided and there were no citations to the records reviewed. (In fact, the "Medical Record(s)" reviewed are not part of the administrative record.)

> b.     Second Appeal and UBH's Second Internal Review

Ms. Butler filed a second level appeal on July 25, 2005. A different doctor, Dr. Joshua Calhoun (a Board Certified Psychiatrist employed by UBH), reviewed the appeal. In an August 23, 2005 letter to Ms. Butler, Dr. Calhoun upheld the decision to deny benefits. (AR 157-158.) Dr. Calhoun stated that he reviewed "Medical Record(s)" and "Case management records," "including all aspects of clinical care involved in this treatment episode." (AR 157.) He reasoned that:

> [f]or the dates 02/17/05 through 03/18/05, the patient's symptoms did not meet [the UBH Guideline criteria]. . . . [T]he client did not appear to be at risk of medically dangerous withdrawal symptoms, and did not require a 24-hour secured environment for treatment. Intensive Outpatient Level of Care treatment was suggested as an alternative level of care.

(AR 157-158.)

> c.     Third Appeal and First External Review

On February 10, 2006, Mr. Butler sent a letter to United requesting an "Independent External Review." (See AR 163-164.) In his letter he requested the "UBH Level of Care Guidelines." (Id. at 164.) As previously noted, he did not receive those Guidelines until July 30, 2008 (900 days after he filed his request for the Guidelines), when United filed the administrative record.

United granted the request for an Independent External Review that Dr. Marc Clemente

7

conducted. After reviewing generically-described categories of documents ("Medical Record(s), Care management records" and the Guidelines) and after "a full investigation of the substance of the appeal including all aspects of clinical care involved in this treatment episode," Dr. Clemente issued his Review Report. (See AR 183-185.) In that Report, he provides a case summary based on diagnoses made and vital signs recorded when Ms. Butler was admitted to Sierra Tucson.[8] He then denied the appeal for the following reasons:

> There were no severe medical complications requiring 24-hour nursing care. There was no imminent risk of harm to self or others. There were no continued toxic affects of the substance use requiring 24-hour monitoring and nursing care. There were no significant mental status changes in the absence of acute withdrawal symptoms requiring 24-hour monitoring.

(Mar. 9, 2006 Ltr. from Dr. Axler to Ms. Butler (reporting results of Dr. Clemente's Review Report) (AR 173).) However, as discussed below, Dr. Clemente used an incorrect, and more restrictive, set of review criteria.

>    d.    Second Corrected External Review by Dr. Clemente

On December 14, 2007, Mr. Butler filed this lawsuit. In his complaint, he challenged two aspects of United's decision: (1) United's procedures; and (2) United's substantive denial of benefits.

But after Mr. Butler filed his court complaint, United discovered that Dr. Clemente had applied incorrect, and more restrictive, criteria [9] in his review of Ms. Butler's claim, rather than

---

[8]The report does not identify the source of the case summary notes, but based on the court's review of case notes in the administrative record, it appears that he was basing his summary on information gathered during Ms. Butler's admission to Sierra Tucson. (Compare AR 183 to AR 257.)

[9]He had reviewed the case using the more restrictive Inpatient Substance Abuse criteria issued by United, rather than the applicable Residential Substance Abuse criteria.

8

the applicable Guidelines.  (See AR 182.)

In his second external review, Dr. Clemente applied the correct criteria.  As set forth in his May 28, 2008 revised Review Report (issued approximately six months after the lawsuit was filed), he upheld United's determination that the Plan benefits did not cover Ms. Butler's residential treatment at Sierra Tucson.  The Case Summary in his revised report is identical to the one in the first report.  (Compare AR 183 to AR 186.)  The Findings/Opinions section of the revised Report stated the following:

> In the opinion of the reviewer, the patient did not meet UBH Medical Necessity criteria for substance abuse, residential treatment from 02/17/05 on.  There was no imminent risk of harm to self or others.  There were no continued toxic affects of the substance used requiring 24-hour monitoring and nursing care.  There were no significant mental status changes in the absence of acute withdrawal symptoms requiring 24-hour monitoring.
>
> An alternative level of care would have been CD IOP.  Based on the UBH Level of Care Guidelines for Residential Treatment, the patient does not meet medical necessity guidelines for continued care at the Residential Rehabilitation Level of Care from 2/17/05 forward.  The patient is motivated for treatment, is not in denial, is not a risk of harm [to] herself or others, is not at risk of exacerbating a concomitant serious medical condition, is not at risk of having withdrawal symptoms and is not residing in an environment subversive to abstinence.  The patient is not presenting symptoms suggesting that she would relapse if treated at a less restrictive level of care, specifically the Intensive Outpatient Level of Care.

(Dr. Clemente's May 28, 2008 Revised Review Report at AR 187.)

During the time Dr. Clemente was conducting his second review, the parties wrestled with discovery and administrative record issues.  As a result of the disputes, the scheduling order was modified, and ultimately Mr. Butler filed an Amended Complaint in November 2008.  In the summer of 2009, the parties filed cross motions for the court's review (see Docket Nos. 38, 40).

After issuing the remand orders (described below), the court ordered a third external

9

review, which was completed on December 28, 2011. (See AR 294-300.) The two psychiatrists conducting that review concluded that the treatment at Sierra Tucson was not medically necessary. That review is currently before the court. But before discussing the issues arising out of that review, the court must provide some context about the appeal process in the court, including a discussion of multiple remand orders.

**B.      Court Review of Mr. Butler's ERISA Appeal**

Throughout this litigation, the issue has been whether United conducted a "full and fair review" of Ms. Butler's claim for benefits. The issue is still not resolved despite two remands to United (one in 2010, followed by another in 2011). In a set of three orders issued between September 2010 and November 2011, the court addressed a series of starts and stops that have delayed resolution of this matter. Along with the remands, the court has had to resolve the parties' dispute about the scope of the administrative record.

    1.      First Remand Order in 2010

In a September 9, 2010 Memorandum Decision (First Remand Order), the court found that Mr. Butler had made a "colorable procedural challenge" to the claim review process, that United's review process was procedurally defective, and that the administrative record was incomplete. (Docket No. 43 at 10, 12.) The court held that the review was procedurally flawed because the record lacked any evidence that United considered the letters from Ms. Butler's treating physicians. The court remanded the matter to United for a new review based the administrative record supplemented by the treating physicians' letters.

    2.      Second Remand Order in 2011

United supplemented the administrative record with Ms. Butler's treating physician

letters from Dr. Jobson and Dr. Scott. After Dr. Clemente's second, and final, conclusion, UBH filed a Renewed Motion for Judgment on the Administrative Record. (See Docket Nos. 47-48.)

But once again, the court concluded that United's attempt to conduct a full and fair review fell short of the requirements of the first remand order. The new decision letter from Dr. Clemente, drafted post-remand, re-stated his conclusion that Ms. Butler was not entitled to benefits under the Plan and clarified to the court that he had reached that conclusion after reading and considering, among other things, letters from Dr. Jobson and Dr. Scott.

The court found that Dr. Clemente's letter did not establish that the review process was procedurally reasonable:

> The point was for United to consider the letters, not just provide them to the Court. It was not merely the omission of those letters in the Administrative Record that made the review process procedurally defective. United did not *explain* why it disagreed with the medical opinions of Plaintiff's treating physicians and psychiatrist. United has attempted to cure that deficiency with Dr. Clemente's recent letter [Doc. 47-1, at 11-12], but falls well short.

(Aug. 1, 2011 Mem. & Order (Docket No. 54) at 15-16 (emphasis added).)

The court once again sent the matter back to United to conduct the review in the manner the court originally instructed in its First Remand Order. The court also ruled that Mr. Butler was entitled to supplement the record and to have a different doctor conduct the independent external review. Voicing its frustration, the court further stated that "[t]his case was remanded to United almost a year ago, and no progress had been made. Instead of providing a new review process, United has continued to fight over the previous one. Any further delay by United may result in sanctions." (Id. at 16 (emphasis added).)

Before supplementing the record, Mr. Butler forwarded the Guidelines to Ms. Butler's

11

treating physicians and others familiar with Ms. Butler's status, condition and/or treatment at the time the claim was made.  Those individuals, after receiving the Guidelines, updated their recommendations based on the review criteria (to which they were not privy in 2005).  Mr. Butler submitted those updated recommendations on September 21, 2011.  (See Docket No. 62.)

After Mr. Butler filed the additional letters, United filed a motion to strike them, contending that because they were written in 2011, they were not materials that the earlier reviewers could have considered.  Magistrate Judge Clifford Shirley denied the motion to strike, noting that the district court had expressly allowed additional materials.  But he also stated that United was allowed to "submit any objections or criticisms it may have of these materials to the reviewer."  (Docket No. 74 at 3.)

## C.   United's Third and Final External Review and Decision Denying Benefits

On November 16, 2011, United sent the updated administrative record to the external reviewer at the Medical Review Institute of America (MRIA).  The updated record contained three new letters submitted by Mr. Butler.[10]  These letters were written in 2011.

United sent the administrative record along with a letter in which United gave the reviewer the following instructions:  "United respectfully submits that you should disregard or give little weight to the three letters."  (AR 276.)  According to United, the new letters were "not relevant" because (1) they did not contain "specific information," just "anecdotal generalizations"; (2) they were created in 2011 and so they were not appropriate evidence of Ms. Butler's situation at the time of her 2005 claim for treatment at Sierra Tucson; (3) only one of the

---

[10]Mr. Butler submitted two other letters, but those were already in the record.

12

three letters was written by a physician; and (4) the letter from Sierra Tucson's Utilization Review Coordinator, Casey Thorp, was not signed and so United suggested that the letter was not legitimate (i.e., it said the letter was "allegedly" written by Casey Thorp). (AR 276-277.)

On November 30, 2011, Mr. Butler remedied some of the problems noted by United in its letter to the reviewer by filing a Notice of Correction and Supplement, which contained a signed letter from Casey Thorp and a letter from Dr. Robert Johnson, Medical Director at Sierra Tucson, who adopted, essentially word for word, what Casey Thorp communicated to United. (See Docket No. 79.) United, however, did not correct the problem by forwarding the signed Thorp letter or the Johnson letter to the reviewer, even though it had knowledge of the letters (at a minimum, through Mr. Butler's formal filing) as well as the time and opportunity to do so.

On January 4, 2012, United filed a December 28, 2011 External Review Report from board-certified psychiatrists Dr. Ivy Ellen Sohn and Dr. Donald Huffman, both of whom work for MRIA. (See Docket No. 82.) The MRIA Report provides a "Reviewer Curriculum Vitae [CV] Capsule" for one of the two reviewers, but it does not identify to whom the CV refers. There is no CV for the other reviewer. According to the summary CV provided, one of the reviewers is board certified in General Psychiatry with a specialty in Child & Adolescent Psychiatry and Forensic Psychiatry. The CV does not mention any expertise in substance abuse treatment.

In this final external review, the doctors determined that the requested treatment was not medically necessary. Based on their decision, United once again denied Ms. Butler's benefits claim.

On April 4, 2012, following receipt of United's final decision, Mr. Butler filed another motion for judgment on the administrative record, in which he contends that United still has not

provided a "full and fair review." (Docket No. 88.)  He requests the court to review the record de novo, award the benefits he claims, award attorneys' fees and costs, and impose ERISA penalties on United.  (See id.)

On April 27, 2012, United filed its "Second Renewed Motion for Judgment on the Administrative Record." (Docket No. 90.)  United relies on the December 28, 2011 MRIA Report.

Following a hearing in the spring of 2013, and at the court's request, the parties supplemented their motions with additional briefs.  (See Docket Nos. 97, 100.)

This matter is now before the court for a third time on cross-motions by the parties.

## II. ANALYSIS

### A.      The Administrative Record

Generally, the court "is 'limited to reviewing the administrative record at the time the plan administrator made its final decision to deny benefits.'" Shelby County Health Care Corp. v. Majestic Star Casino, LLC, 581 F.3d 355, 374 (6th Cir. 2009) (quoting Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 615 (6th Cir. 1998));  see also, e.g., Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston, 419 F.3d 501, 511 (6th Cir. 2005) ("The administrative record in an ERISA case includes all documentation submitted during the administrative appeals process[.]");  Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 522 (6th Cir. 1998) ("the district court is strictly limited to a consideration of the information actually considered by the administrator.").

Over the course of this litigation, the scope of the administrative record (AR) changed

14

because the court allowed Mr. Butler to supplement the record.[11]  That supplementation is contained in the official administrative record (AR 1 through AR 300) now before the court.

In Mr. Butler's latest motion, he raises another procedural challenge to United's final administrative review process.  (See Pl.'s Apr. 4, 2012 Mot. for J. on Admin. Record (Docket No. 88); See also Pl.'s May 7, 2012 Response to United's Second Renewed Mot. (Docket No. 91); Pl.'s Supplemental Brief (Docket No. 100) .)  He alleges that a procedural mishap occurred when United included certain language in the letter accompanying the record sent to MRIA for review.  Mr. Butler contends that the instructions in the letter accompanying the record tainted the review.  The court agrees.

United told the reviewer to "disregard or give little weight to the three letters" provided by Mr. Butler in his supplement to the record.  (AR 276-277.)  United told MRIA that the letters were "not relevant" or appropriate evidence.  (Id.)  United also stated that the letters did not "provide any specific information regarding Janie Butler's condition on February 17-18, 2005" and that the letters contained "anecdotal generalizations" that were not relevant to the eligibility criteria.  (AR 276.)  United also dismissed the value of the 2011 letters, stating that the letters were written six years after the claim was made.  Although the letters were late, the court specifically allowed Mr. Butler to supplement the record.  The later letters are consistent with what was said in 2005, are consistent with the case notes, and are consistent with each other.  They are very relevant.

The court notes that Mr. Butler did not have the Guidelines before submitting his appeal

---

[11]See Docket No. 43 at p. 10, 15-16; Docket No. 47; Docket No. 54 at p. 16; Docket No. 74 at p. 3; Docket No. 77 Ex. A.

because United did not send the Guidelines to Mr. Butler despite his express written request in 2006.[12] This negatively affected Mr. Butler's ability to provide timely information on Ridgeview treatment or gather supporting, relevant letters from Ms. Butler's treating physicians in a timely manner. Without the review criteria, Dr. Jobson and Dr. Scott were at a disadvantage when writing their 2005 letters because they did not have crucial information would be used by the reviewer. The 2011 letters supplementing the record were written after Mr. Butler had the Guidelines and after he had permission from the court to supplement the record. The lateness of the letters was justified.

Also, United received, through a November 30, 2011 court filing, the signed Thorp letter and Dr. Johnson's letter approximately two weeks after sending the record to the external reviewer (the letter to the external reviewer from UBH was dated November 16, 2011 (AR 276)) and four weeks before the final external review report was issued. But United failed to forward the signed Casey Thorp letter to correct what was clearly a mistake. It also failed to forward Dr. Johnson's letter. United could have fixed the mistake by forwarding those letters to the final external reviewer. United's statement that it was too late to forward those letters on (see United's Supplemental Brief (Docket No. 97) at 13) has no support in the record.

United's instructions to the reviewer overstepped the bounds of what the court allowed it to do. In its November 14, 2011 Order, the court remanded, adding that Mr. Butler "will have

_____

[12]The court is not persuaded by United's contention that Mr. Butler had the Guidelines criteria as soon as February 2005 when Dr. Freed issued his letter of decision, in which portions of the criteria were quoted. (See United's Supplemental Brief (Docket No. 97) at 18.) Dr. Freed's reference was incomplete and buried in boilerplate language. More importantly, it did not expressly state that only one of the six criteria had to be satisfied.

16

the opportunity on remand to supplement the record, so [United] should have the opportunity to fully and fairly administer Ms. Butler's claim once the record is complete." (Docket No. 75 at 11.) Nevertheless, United moved to strike the documents submitted by Mr. Butler. United States Magistrate Judge Shirley denied the motion to strike but gave United the opportunity to "submit any objections or criticisms it may have of these materials to the reviewer." (November 7, 2011 Order (Docket No. 74) at 3.) United took Judge Shirley's allowance too far when it told the reviewer that the added letters should be disregarded or given little weight. See also Williams v. Int'l Paper Co., 227 F.3d 706, 712-13 (6th Cir. 2000) (disapproving plan administrator's statement to reviewer to disregard treating physicians' letters). The court does not interpret Judge Shirley's order to give United the freedom to instruct the reviewer to disregard the material altogether. Moreover, by giving such an instruction, United essentially nullified the district court's order that the external reviewer consider additional documents submitted by Mr. Butler.

Because the majority of Mr. Butler's latest procedural challenge is justified, the court will consider the signed Casey Thorp letter and the letter from Dr. Robert Johnson reiterating verbatim the findings in the Casey Thorp letter.

**B.     Standard of Review**

The court must determine whether UBH offered a "reasoned explanation," based on the evidence before it, to support the outcome. Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998). In other words, "the standard requires that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." Id. If it is not, the decision is arbitrary and capricious. Id.; see also Kalish, 419 F.3d at 506.

17

Also relevant to the court's review is the fact that UBH has a conflict of interest because UBH was both claim evaluator and payor of benefit claims. "[W]here a claims administrator also funds the plan, there is a tension between the fiduciary duty to administer the plan for the benefit of the participants and the fiscal pressures to keep costs down." Killian, 152 F.3d at 520. Accordingly, the court considers that conflict of interest when determining whether UBH gave a full and fair review of Ms. Butler's claim in its latest review of the record. The conflict of interest, however, does not change the standard of review. Kalish v. Liberty Mut./Liberty Life Assurance Co. of Boston, 419 F.3d 501, 506 (6th Cir. 2005).

## C.   Futility of Remand

"[W]here 'there is no evidence in the record to support a termination or denial of benefits,' an award of benefits is appropriate without remand to the plan administrator. Thus, where a plan administrator properly construes the plan documents but arrives at the 'wrong conclusion' that is 'simply contrary to the fact,' a court should award benefits. Under such circumstances, 'remand is not justified' to give the plan administrator 'a second bite at the apple.'" Shelby at 373-74 (internal citations omitted). See also Williams v. Int'l Paper Co., 227 F.3d 706 (6th Cir. 2000) (finding that decision was arbitrary and capricious and that retroactively awarding benefits, not remand, was appropriate remedy); Glenn v. MetLife, 461 F.3d 660 (6th Cir. 2006) (ordering benefits without remand to the plan administrator); Evans v. UnumProvident Corp., 434 F.3d 866 (2006) (reinstating benefits).

In other words, if there are "no additional facts to develop or other findings that ... the plan administrator needs to make" concerning the benefits claim, remand "is an inappropriate remedy in this case." Id. at 374. As it was in Shelby, remand in this case would be futile and

18

would serve no purpose because the administrative record provides clear support for granting of benefits.  See also Walsh v. Metropolitan Life Ins. Co., Case No. 3:06-1099, 2009 WL 603003 at *10 (M.D. Tenn. Mar. 9, 2009) ("[D]istrict courts clearly must intervene where remand would not protect the procedural rights of the claimant.").

**D.    Award of Benefits**

The court finds that United's decision, even backed by the external review of doctors from MRIA,[13] is arbitrary and capricious.

1.    External Review Report from MRIA

MRIA's stated reason for its recommendation not to certify for coverage was that "the documentation does not support the medical necessity of the residential rehabilitation level of care from 02/17/05 - 3/17/05."  (AR 295.)  The MRIA Report sets forth a brief history and then cites to information contained in UBH case notes dated February 16-18, 2005, and May 31,

---

[13]The MRIA report lists two psychiatrists as reviewers.  But the "Reviewer Curriculum Vitae Capsule" only provides a list of qualifications for one doctor and it does not specify which doctor.  Moreover, the doctor's "special qualifications" are in "Child & Adolescent Psychiatry and Forensic Psychiatry," (AR 299) neither of which specifically relates to treatment of patients with addiction problems.  In contrast, Ms. Butler's treating physicians and others who provided information supporting Ms. Butler's claim specialize in, or are particularly experienced with, the treatment of mental disorders and substance abuse.  For example, Dr. Michael Scott's April 29, 2005 letter and Dr. Johnson's September 16, 2011 letter lists each of them as Medical Director for Sierra Tucson Inc., which is a "freestanding psychiatric hospital" and "is nationally recognized and acclaimed for treatment of mental, nervous and substance dependence disorders." (AR 263 & 274; Docket No. 80.)  Dr. Jobson's August 18, 2011 letter states that he was experienced and specializes in the area of "addictionology" and treatment of patients with mental illness and substance abuse.  (See AR 270.)  The same can be said of Mr. Schweickhardt, who, as Admissions Director at Cornerstone of Recovery (an 84-bed inpatient facility), assessed patients and recommended appropriate levels of care, and is a Registered Addiction Specialist.  (AR 271-273.)  Yet none of the information provided by those experienced proponents of Ms. Butler's case was considered relevant by United or addressed in the MRIA Report.

19

2005.[14]

Although the report lists the treating physicians' letters as "records reviewed," the report contains no mention whatsoever of those letters, much less an explanation why the conclusions in the letters were not adopted. As the Sixth Circuit has stated, "a plan may not reject summarily the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion." Elliott v. Metropolitan Life Ins. Co., 473 F.3d 613, 620 (6th Cir. 2006) (emphasis added); see also Evans, 434 F.3d at 877 ("[A] plan administrator may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician.").

Also problematic is the MRIA Report's citation to the May 31, 2005 case note, which states that Ms. Butler "did not fail any lower level of care in recent past." (AR 296.) The report does not state what "recent" means, nor does the Plan define the term. The court finds it highly relevant that just four months before Ms. Butler's admittance to Sierra Tucson, she had been treated at Ridgeview at a lower level of care (IOP) and that the care was approved by United. To the court, this is exactly what the Guidelines require.

For these reasons and for the reasons set forth below, the court finds that the MRIA Report does not support United's decision to deny Ms. Butler's claim for benefits.

_____

[14]The court finds that the MRIA Report appears to have been written in a somewhat hasty and careless way. The MRIA Report contained some factual inaccuracies. In the history section, it lists the date of Ms. Butler's treatment at Ridgeview as July 2004, but the overall record makes it very clear that the treatment was in September 2004. Also, it stated that Ms. Butler left "an outpatient substance abuse program [i.e., Ridgeview] . . . AMA after 2 weeks . . . ." (AR 295.) Actually, Ms. Butler was in the outpatient program for twenty-eight days and then left the next level of treatment (PHP) against medical advice. (AR 122-124, 127-131.) Also, inexplicably, MRIA discusses two other sets of guidelines, neither of which is relevant to the analysis.

20

2.    The Court's Review of the Administrative Record

Upon a review of the record (with or without the signed Casey Thorp letter and the letter

from Dr. Johnson), the court determines that Ms. Butler's situation in April 2005 satisfied the

first of the six criteria set forth in the Guidelines: "History of continued and severe substance

abuse despite appropriate motivation and recent treatment in an intensive outpatient or partial

hospital program."[15]  (AR 110-112)

a.    "History of Continued and Severe Substance Abuse"

Ms. Butler had a history of continued and severe substance abuse.  The record is filled

with evidence of this, as the following examples demonstrate.

Dr. Jobson, who had treated Ms. Butler for an "extended period of time" (AR 270),

diagnosed Ms. Butler in his 2005 letter as suffering from "severe alcoholism that had co-present

major affective disorder and mixed anxiety disorder."  (AR 264.)  He opined in both his 2005

---

[15]The fifth criterion—"A living environment that is subversive to abstinence, and a high
risk of substance induced dangerous behavior"—arguably has been satisfied as well.  The record
is full of references to the harm Ms. Butler was doing to herself (not suicidal attempts, but
physical ailments caused by excessive drinking), and the risk of harm to others by driving while
intoxicated (indeed, she had been in a motor vehicle accident and had blackouts).  There are also
multiple references in the record that Ms. Butler's husband drank and had a problem controlling
his drinking.  (See, e.g., Schweickhardt Letter (AR 271); Case Notes (AR 124-126, 128, 130).)
What is not clear from the record is whether the husband continued his drinking at the time Ms.
Butler was admitted to the Sierra Tucson program.  Certainly, residing with a husband with a
drinking problem would create a "living environment that is subversive to abstinence."  But the
record also contains evidence that Mr. Butler had controlled his drinking habits at some point and
that Ms. Butler lived with her non-drinking sister for a time.  (See Sept. 13, 2004 Case Note (AR
122) ("husband says he has not been drinking and no [alcohol] in house"); Sept. 10, 2004 Case
Note (AR 124) (living with sister); Aug. 18, 2004 (AR 130) (same).)  On balance, the record
does not contain sufficient evidence that Ms. Butler's husband had not yet controlled his drinking
habits by the time Ms. Butler entered the Sierra Tucson program or that she was living with her
husband at that time.

letter and his 2011 letter that the proposed treatment at Sierra Tucson "was a timely, needed, medically necessary referral" and that the "inpatient treatment [was medically necessary] due to the severity of the illness and the failure of less restrictive treatments in the past." (AR 264, 270.) Mr. Schweickhardt noted[16] that when he met Ms. Butler in January 2005, she "was extremely underweight and had questionable color. She appeared intoxicated while at AA meetings." (AR 271.) The record shows that Ms. Butler started drinking at a very young age (Feb. 17, 2005 Case Note (AR 135)), that her heavy drinking started five years before (id.), and that she "endorses binge drinking four to five times per week, drinking six to nine vodka drinks per episode with blackouts and no recollection of events." (Thorp/Johnson letter at AR 275 & Docket No. 80.) The history of continued and severe substance abuse was also noted in a September 10, 2004 case note, where United reported that Ms. Butler "started using heavily 6 to 7 years ago. 3 to 5 drinks a night of vo[d]ka, longest time sober 8 days, these past 8 days." (AR 124.) Despite intensive outpatient treatment and attendance at AA meetings, she relapsed several times and had several blackouts. (See, e.g., Jobson 2005 Letter, Jobson 2011 Letter; Sept. 13, 2004 Case Note (AR 123) (noting that Ms. Butler relapsed four times while in IOP at Ridgeview); Sept. 7, 2004 Case Note ("She is at high risk for relapse. Situation very grim."); Aug. 31, 2004 Case Note (AR 128) ("IOP needed to prevent relapses").)

All of these citations to the record support the conclusion that Ms. Butler's substance

---

[16]Despite United's dismissal of the letter from Mr. Schweickhardt, the court finds that his letter is important. Although Mr. Schweickhardt is not a physician, his letter provides non-medical but very relevant observations from a professional who actually observed and interacted with Ms. Butler at the relevant times in a clinical setting. And his statements corroborate evidence in the record and the content of her treating physicians' letters.

abuse continued over many years and was severe.

b.    "Appropriate Motivation"

Ms. Butler had appropriate motivation.  Her failure to control her drinking despite treatment does not suggest that she was not motivated.  Dr. Jobson noted in 2005 that Ms. Butler had failed "less restrictive treatments in the past," including outpatient treatments and AA meetings, but he described those episodes as an "attempt to stop <u>on her own</u>."  (AR 264 (emphasis added).)  Mr. Schweickhardt noted Ms. Butler's failure at IOP treatment at Ridgeview, but also described her numerous attempts at controlling her substance abuse by attending AA meetings.  This suggests a motivation to take care of herself.  He said:

> Not long before I met her, Mrs. Butler had failed intensive outpatient treatment at Ridgeview in Atlanta.  She had been making numerous attempts at sobriety in Alcoholics Anonymous and had made efforts to utilize sponsorship but made no progress.  She was seeing Dr. Kenneth Jobson, a very reputable psychiatrist specializing in addiction, but was continuing to spiral downward.

(AR 271-272.)  (<u>See also</u> Sep. 10, 2004 Case Note (AR 124) (based on a peer to peer discussion, the note stated that Ms. Butler "has been motivated and is active and self disclose[s] in the groups . . . ."); Aug. 31, 2004 Case Note (AR 127) ("Member is doing well in program" and is attending AA meetings regularly).)

Ms. Butler was trying to recover.  Any suggestion otherwise is not supported by the record.

c.    "Recent Treatment" at Intensive Outpatient Level of Care

Ms. Butler had recently received treatment in an intensive outpatient or partial hospital program.  As Mr. Schweickhardt noted, "Mrs. Butler had previously tried and failed intensive outpatient care at Ridgeview in Atlanta.  This cannot be described as anything other than an utter

23

failure of IOP treatment." (AR 272.) The record contains case notes that specifically describe Ms. Butler's participation in IOP at Ridgeview. (See, e.g., AR 122-131. See also Jobson 2005 Letter (AR 264) ("Mrs. Butler failed outpatient attempts at treatment.").)

The treatment at Sierra Tucson was medically necessary. Even UBH's claim notes contained the following statement: "[Ms. Butler] has relapsed [four times] while in IOP [at Ridgeview]. . . . It appears [she] needs structure and intensity of high LOC [level of care] to maintain sobriety." (Sept. 13, 2004 claim note (AR 123).) That "high LOC" was what Ms. Butler received at Sierra Tucson despite United's refusal to cover the treatment.

**E.      Award of Pre-Judgment Interest**

Ms. Butler satisfied the first of the UBH Guidelines criteria which made her eligible for treatment at Sierra Tucson. United's denial of Ms. Butler's claim for benefits for all these years is arbitrary and capricious behavior. United's careless handling of Ms. Butler's claim, and its repeated denials, is confounding. The court does not believe that United acted in bad faith. Rather, the court believes that United's handling of Ms. Butler's claim was a result of a bureaucratic, perfunctory, and scattered process that was a product of United's underlying conflict of interest. Given the length of this litigation, the multiple remands, and the long time during which Mr. Butler fought for payment of the claim, the court, for equitable reasons, awards pre-judgment to Mr. Butler on the benefits award. See Ford v. Uniroyal Pension Plan, 154 F.3d 613, 616 (6th Cir. 1998) ("Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles.").

**F.**     <u>**Award of Statutory Penalties**</u>

ERISA authorizes the court to impose statutory penalties in certain circumstances. Here, an administrator who fails to furnish, upon a participant's request, any internal rule, guideline, or similar criterion that was relied upon to make the adverse determination may be liable for up to $110 per violation (i.e. per day). 29 U.S.C. § 1132(c)(1)(B); 29 C.F.R. § 2575.502c-1 (2013). The calculation of the penalty begins thirty days after the participant's request for such information.

United was required to provide a copy of the Guidelines upon request. Mr. Butler requested those Guidelines on February 10, 2006 (<u>see</u> AR 164), but he did not receive those Guidelines until July 30, 2008, when United filed the administrative record. That filing came 900 days after Mr. Butler formally requested the Guidelines. Given the length of time during which the Guidelines were not disclosed, and the negative effect such non-disclosure had on Mr. Butler to present his appeal, the court awards the maximum penalty for each day of delay, which amounts to $99,000.00.

<u>**ORDER**</u>

For the reasons set forth above, the court holds that:

1.     United's decision to deny Ms. Butler's claim was arbitrary and capricious, remand would be futile, and United is hereby ORDERED to pay Plaintiff John Butler the benefits owed, in the amount of $35,724.80 (<u>see</u> AR 113-121), plus pre-judgment interest.

2.     United is hereby ORDERED to pay $99,000.00 in statutory penalties to Plaintiff John Butler.

3.     The court defers a ruling on Mr. Butler's request for attorneys' fees until it

25

receives additional briefing on the issue. The court is concerned that Mr. Butler represented himself for much of the case. The issue is whether, despite his *pro se* status, he is entitled to fees under ERISA. United is hereby ordered to respond to Mr. Butler's request for attorneys' fees (and the accompanying analysis in Docket No. 100) no later than October 28, 2013. Mr. Butler may file a reply no later than twenty-eight days after United files its response.

SO ORDERED this 30th day of September, 2013.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge